**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WEBB OPERATING COMPANY,

       Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY,

       Defendant.
_____/

CASE NO. 11-10157

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO INTRODUCE COMPLETE COPIES OF ZURICH INSURANCE POLICIES**

    Before the Court is Defendant Zurich American Insurance Company's "Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) Or, Alternatively, For Summary Judgment Pursuant to Fed. R. Civ. P. 56; and its Unopposed Motion to Introduce Complete Copies of Zurich Insurance Policies Attached Only in Part to Plaintiff's Complaint." (Doc. 6). Plaintiff Webb Operating Company alleges Defendant wrongfully denied its claim under certain insurance policies. Defendant explains it denied the claim because Plaintiff filed it three years late. The Court heard oral argument on May 12, 2011. For the reasons that follow, the Court **GRANTS** Defendant's motions.

**I.    STATEMENT OF FACTS**

    Plaintiff Webb Operating Company operates a gas station in Highland Park, Michigan. Plaintiff purchased its first "Storage Tank System Third Party Liability and Cleanup Policy" from Defendant Zurich American Insurance Company in 2002. (Doc. 8 Ex.

1

A). The policy covers clean up costs resulting from a leak or "release" of fuel from the underground storage tanks located on Plaintiff's property. Defendant sells Plaintiff policies on an annual basis. Plaintiff has renewed with Defendant every year since 2002.

Relevant to the subject motion, Policy USC 3980341-03, effective September 28, 2005 – September 28, 2006 (the "2005-2006 Policy"), provides:

> [Defendant] will pay on behalf of the "insured" any "cleanup costs" required by "governmental authority" as a result of a "release(s)" that "emanates from" a "scheduled storage tank system(s)" at a "scheduled location", that commences on or after the "retroactive date" and is first discovered by the "insured" during the "policy period", provided the "claim" is reported to us during the "policy period", or any applicable extended reporting period.

(Doc. 6 Ex. 4 at 8 of 27).

In June 2006, one of Plaintiff's underground storage tanks failed a "tank tightness" test during an inspection. (Doc. 8 Ex. A). Plaintiff hired Huron Environmental L.L.C. ("Huron") to perform remediation services in connection with the failing tank. Plaintiff and Huron decided to "close" the tank. The "closing" procedure is fully authorized under the applicable Michigan Department of Environmental Quality rules. Plaintiff's President, Mike Ajami, explained that he decided not to submit Huron's bill ($8,050) to Defendant under the 2005-2006 Policy because the deductible was $5,000 and because he did not want a policy claim to raise premiums or affect future insurability. (Id.)

Huron continued to monitor the tank and oversee remediation efforts at Plaintiff's gas station for the next three years. During this time, the cost of Huron's services grew to a point at which Plaintiff became unable to pay. As a result, Plaintiff filed a claim with Defendant sometime in October 2009. (Doc. 8 at 2, n.1). Plaintiff believed its loss was covered under the 2005-2006 Policy, or alternatively, under Policy USC 3980341-07,

2

effective September 28, 2009 – September 28, 2010 (the "2009-2010 Policy") (Doc. 6 Ex. 5).

On March 3, 2010, Defendant denied Plaintiff's claim. (Doc. 8 Ex. D). Defendant explained there was no coverage under the 2005-2006 Policy because Plaintiff failed to give a notice of claim on or before October 28, 2006, the last day of the extended reporting period under that policy. As for the 2009-2010 Policy, Defendant said the loss was not covered because Plaintiff discovered the release three years before the coverage period described in that policy even began.

Plaintiff challenged Defendant's denial in Wayne County Circuit Court and Defendant removed to this Court. (Doc. 1). Defendant's dispositive motion and its unopposed motion to introduce complete copies of the relevant insurance polices are now before the Court. (Doc. 6).

## II. STANDARD OF REVIEW[1]

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, (1986). Rule 56 mandates summary judgment against a party who fails to establish the existence of an

---

[1] Defendant filed its motion pursuant to Rule 12(b)(6) and/or Rule 56. (Doc. 6 at 5-7). Plaintiff argued Rule 56 standards in its response and introduced matters outside the pleadings to defeat the motion. (Doc. 7 Ex. A & E). Defendant did not object to Plaintiff's Rule 56 characterization in its reply or at oral argument. Accordingly, the Court will apply summary judgment standards.

3

element essential to the party's case and on which that party bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The Court "must lend credence" to the non-moving party's interpretation of the disputed facts. Marvin v. City of Taylor, 509 F.3d 234, 238 (6th Cir. 2007) (citing Scott v. Harris, 127 S.Ct. 1769, 1775 (2007)). The non-moving party may not rest upon its mere allegations, but rather must set out specific facts showing a genuine issue for trial. See Fed. R. Civ. P. 56(c)(1). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

**III.    ANALYSIS**

    **A.    Motion to Introduce Complete Copies of Relevant Policies**

The Court grants Defendant's unopposed motion to introduce complete copies of the 2005-2006 and 2009-2010 insurance policies and agrees with the parties that the full text of the policies will help the Court resolve the issues presented. See (Doc. 6 at 2, ¶2).

**B.     Motion for Summary Judgment**

    **1.     Choice of Law**

The Court will apply Michigan Law in this insurance coverage dispute.  Defendant raised the choice of law issue by suggesting that, despite a choice of law clause that calls for the application of New York law (Doc. 6 Ex. 4 at 15 of 27; Ex. 5 at 16 of 30), the Court could apply Michigan law because Michigan arguably has a paramount interest in adjudicating this matter.  In response, Plaintiff provided a succinct choice of law analysis under Chrysler Corp. v. Skyline Indus. Servs., Inc., 528 N.W.2d 698, 702 (Mich. 1995) and persuasively argued the Court should apply Michigan law.  Defendant did not object to Plaintiff's choice of law conclusion in its reply or at oral argument.  In fact, Defendant cites and applies Michigan law throughout its reply brief.  The Court agrees with Plaintiff's analysis of the issue, acknowledges Defendant's acquiescence, and will apply Michigan law.

    **2.     The 2005-2006 Policy**

The parties dispute whether Defendant must show prejudice before it can deny Plaintiff's claim under the 2005-2006 Policy.  To resolve that question, the Court must determine whether the Policy is a "claims made" policy or an "occurrence" policy.  The major distinction between the "occurrence" policy and the "claims made" policy is the difference between the peril insured.  See Stine v. Continental Cas. Co., 349 N.W.2d 127, 130 (1984) (quotation omitted).  In the "occurrence" policy, the peril insured is the "occurrence" itself. Coverage attaches upon the "occurrence" happening, even if the claim is not made for some time thereafter. Comparatively, in the "claims made" policy, it is the

5

making of the claim, subject to the policy terms, which is the event and peril being insured.

Under an "occurrence" policy, "an insurer who seeks to cut off responsibility on the ground that its insured did not comply with a contract provision requiring notice immediately or within a reasonable time must establish prejudice to its position." Koski v. Allstate Ins. Co., 572 N.W.2d 636, 639 (Mich. 1998) (citing Wendel v. Swanberg, 85 N.W.2d 348 (Mich. 1971)). Under a "claims made" policy, an insurer is not required to show prejudice when denying an untimely claim. Schubiner v. New England Ins. Co., 207 Mich. App. 330 (1994); see also Westport Ins. Corp. v. Al Bourdeau Ins. Services, Terri's Lounge, Aaron Theriault, 2010 WL 1507785, *6 (Mich. App. Apr 15, 2010) ("[T]he requirement of prejudice developed in the context of 'occurrence' policies."); Title One, Inc. v. Nat'l. Union Fire Ins. Co. of Pittsburgh, Pa., 2009 WL 3059144 (E.D. Mich., September 24, 2009) (applying Schubiner and concluding insurer not required to show prejudice under a "claims made" policy).

The Court interprets the Policy language to determine whether it is a "claims made" policy or an "occurrence" policy. The interpretation of an insurance contract is a question of law for the court. Taylor v. Blue Cross & Blue Shield, 517 N.W.2d 864 (Mich. 1994). The rules of contract interpretation apply to the interpretation of insurance contracts. Citizens Ins. Co. v. Pro-Seal Serv. Group, Inc., 730 N.W.2d 682 (Mich. 2007). A court should read the language of an insurance contract as a whole and give effect to every word, clause, and phrase. Klapp v. United Ins. Group Agency, Inc., 663 N.W.2d 447, 453 (Mich. 2003). Where the policy language is clear, a court must enforce the specific language of the contract. Heniser v. Frankenmuth Mut. Ins. Co., 534 N.W.2d 502, 504 (Mich. 1995). An insurance contract is clear and unambiguous if it fairly allows only one

interpretation. Farm Bureau Mutual Ins. Co. v. Nikkel, 596 N.W.2d 915 (Mich. 1999).

The 2005-2006 Policy is a "claims made" policy. The first sentence of the agreement expressly provides that "[t]his is a claim made and reported policy." (Doc. 6 Ex. 4 at 8 of 27). The Policy defines "claim" as "notice by the insured during the policy period of a release from a scheduled storage tank system." (Id. at 9 of 27). Under the unambiguous Policy language, coverage attaches "provided the 'claim' is reported to us during the 'policy period', or any applicable extended reporting period." (Id. at 8 of 27). Coverage is unquestionably conditioned upon Plaintiff filing a 'claim' within the specifically defined reporting period and not upon the release simply occurring. See Sigma Financial Corp. v. American Intern. Specialty Lines Ins. Co., 200 F.Supp.2d 710, 716 (E.D. Mich. 2002) ("[I]n a 'claims made' policy, notice is a condition precedent to coverage."). Therefore, the Policy is a "claims made" policy.

As such, Defendant does not have to show prejudice to deny Plaintiff's untimely claim. The Policy covered "clean up costs" from a release if two conditions were satisfied: (1) Plaintiff discovered a release during the policy period (September 28, 2005 through September 26, 2006) and (2) Plaintiff gave a notice of claim on or before October 28, 2006, the end of the applicable extended reporting period. The parties agree Plainitff discovered the release on June 2, 2006, thus satisfying the first condition. Plaintiff did not, however, satisfy the second condition because it did not give Defendant a notice of claim until October 2009. Plaintiff's notice was untimely under the Policy terms. Defendant does not have to demonstrate prejudice when denying the untimely claim because this is a "claims made" policy. Accordingly, the Court finds Plaintiff has no coverage under the 2005-2006 Policy.

### 3. The 2009-2010 Policy

Plaintiff contends the 2009-2010 Policy covers the June 2006 release because it first "discovered" the release would cause substantial cleanup costs in October 2009. The Court rejects Plaintiff's interpretation of the Policy language. Defendant agreed to "pay on behalf of the 'insured' any 'cleanup costs' required by 'governmental authority' as a result of a 'release(s)' that . . . is first discovered by the 'insured' during the 'policy period'." (Doc. 6 Ex. 5 at 9 of 30). Contrary to Plaintiff's interpretation, the Policy terms unambiguously show that it is the discovery of a *release* during the policy period that triggers coverage, not the discovery of the *amount* of cleanup costs. Plaintiff admits it discovered the release on June 2, 2006. Plaintiff's discovery did not occur during the 2009-2010 policy period. Consequently, there is no coverage available under the 2009-2010 Policy.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** under Rule 56 Defendant's "Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) Or, Alternatively, For Summary Judgment Pursuant to Fed. R. Civ. P. 56; and its Unopposed Motion to Introduce Complete Copies of Zurich Insurance Policies Attached Only in Part to Plaintiff's Complaint." (Doc. 6).

**IT IS SO ORDERED.**

                                          s/Marianne O. Battani

                                          MARIANNE O. BATTANI
                                          UNITED STATES DISTRICT JUDGE

DATED: July 8, 2011

**CERTIFICATE OF SERVICE**

    Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

                                                     s/Bernadette M. Thebolt  
                                                     Case Manager